IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD K.,

   Plaintiff,

    v.         Case No. 18 C 7316

ANDREW M. SAUL,     Magistrate Judge Beth W. Jantz
COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard K.[1] seeks review under 42 U.S.C. § 405(g) of the Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons below, the Court reverses the Commissioner's decision.

## BACKGROUND

In October 2012, Plaintiff applied for DIB, alleging a disability onset date of April 1, 2012. (R. at 318–19.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 143, 151.) Plaintiff then requested a hearing, which was held by an Administrative Law Judge ("ALJ") in February 2015. (*See id.* at 78–142.) The ALJ issued an unfavorable decision in April 2015, but the Appeals Council vacated that decision and remanded because Plaintiff's date last insured was listed as December 31, 2014 instead of December 31, 2015, and thus there was an

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

unadjudicated period from December 31, 2014 to the decision date. (*Id.* at 163–72, 177–78.)

At the second administrative hearing, Plaintiff conceded that he had medically improved as of May 1, 2015, which was when he returned to his previous job, and sought a closed period of disability from April 1, 2012 to May 1, 2015. (R. at 45–46.) On May 2, 2018, the ALJ issued a decision rejecting Plaintiff's proposed closed period, finding that Plaintiff was not disabled from April 1, 2012 through December 31, 2016, and denying his request for benefits. (*Id.* at 15–30.) Applying the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had engaged in substantial gainful activity from May 1, 2015 through December 31, 2016 (step 1); his degenerative disc disease and Crohn's Disease were severe impairments (step 2); those severe impairments did not meet or equal a listing for a presumptive disability (step 3); given his residual functional capacity ("RFC"), he was unable to perform his past work (step 4); and he could still work as a sorter, assembler, or packer (step 5). (R. at 18–29.) In determining Plaintiff's RFC at step 4, the ALJ found that Plaintiff could perform sedentary work except that, because of his back pain, he needed to use a cane for ambulation and to change positions between sitting and standing for a few minutes (less than 5) every 30 minutes. (R. at 19, 26.)

The Appeals Council declined review, making the ALJ's determination the final decision of the Commissioner. (R. at 3.)

## DISCUSSION

The Court will uphold the ALJ's decision only if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and her conclusion. *Jeske v. Saul*, No. 19-1870, 2020 WL 1608847, at *3 (7th Cir. Apr. 2, 2020) (internal quotation marks omitted) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

Plaintiff raises several challenges to the ALJ's decision. (*See* Dkt. 14 at 8–15.) After reviewing the record and the briefs, the Court is persuaded by Plaintiff's related arguments that the ALJ erred when evaluating Plaintiff's statements about the severity of his Crohn's Disease symptoms and that the ALJ failed to account for Plaintiff's need to take "frequent, lengthy bathroom breaks" in crafting his RFC.[2] (*Id.* at 11, 13–15.)

## I.    Subjective Symptom Evaluation

Where, as here, the ALJ concludes that the claimant's impairments could reasonably be expected to cause his alleged symptoms, (R. at 25), the ALJ must then "evaluate the intensity and persistence of [the claimant's] symptoms" in order

---

[2] Because the Court remands on these grounds, it need not address Plaintiff's other arguments at this time.

to determine "how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). The ALJ has to give specific reasons for her findings regarding Plaintiff's subjective complaints that are supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The findings "must be specific enough to enable the claimant and [the Court] to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Plaintiff testified that, as a result of his Crohn's Disease, between April 2012 and May 2015, he averaged 5 to 6 bowel movements per day and spent between 20 minutes to an hour in the restroom each time because the bowel movements would "stop and start." (R. at 20, 48–49, 62.) He explained that, before he quit his job in April 2012, his usual bathroom breaks would take 20 to 30 minutes. (*Id.* at 63.) Plaintiff also reported frequent bowel movements to his physicians: the reports varied from as many as 8 to 10 bowel movements per day before he was prescribed Humira, to at best 3 to 5 bowel movements per day after he began taking Humira.[3] (*See id.* at 459, 496, 587, 590, 722, 733, 795.) He repeatedly described these bowel movements as gradually becoming "loose" and/or "watery" throughout a day. (*Id.*)

Plaintiff argues—and the Court agrees—that the ALJ erred when evaluating these statements. (*See* Dkt. 14 at 13–15.) In declining to fully credit Plaintiff's

---

[3] Humira is an anti-inflammatory medication used to treat moderate to severe Crohn's Disease. HUMIRA, https://www.humira.com/crohns/how-humira-works-for-crohns (last visited Apr. 27, 2020).

subjective allegations regarding his Crohn's Disease symptoms,[4] the ALJ relied on

Plaintiff's treatment and work history:

> As to his Crohn's disease, despite an onset date of April 1, 2012, he did not seek treatment until two months later on June 11, 2012 (1F/77; 5F/66). Records showed that he stopped medication, which led to increased symptoms, i.e., frequent, watery bowel movements, mostly non-solid along with frequent cramping. He was restarted on medications, which apparently helped because just two months later, in August 2012, he reported only intermittent loose stools (1F/66). He was started on additional medication in September 2012, which he apparently took only through November 2012 (1F/15, 55-56). A March 2013 showed only mild active inflammation (1F/17). He was started on Humira in May 2013 and reported improvement (1F/11; 2F/35, 60, 65). He added that since starting Humira three months early, he still had Crohn's symptoms but fewer loose stools. After increase dosage of Humira, his symptoms improved further. By April 2014, he reported no bowel or bladder incontinence and simply reported having diarrhea (5F/24). By July 2014, he reported to Dr. Ying that his Crohn's disease was better (4F). In fact, by July 29, 2014, he reported improvement with Azathioprine, less watery stools and 'just a few soft bowel movements' up to four a day (4F/69-71). Generally, his symptoms remained under good control with the appropriate medication regime and medication compliance, particularly as the claimant admitted improvement, returned to work in April 2015, and worked until August 2016 (7D; 8D; 9D; 10D; 19E; testimony).

> . . . Although the claimant testified he needed 20 minutes up to 60 minutes in the restroom, the claimant's treatment records do not support these allegations, particularly as he returned to work in April 2015 and there is no information from the claimant's employer as to this issue during recent or prior employment related to these limits.

(R. at 26–27.) These reasons, however, are erroneous or not supported by

substantial evidence in the record. Remand is therefore required for the ALJ to

---

[4] The Court notes that the ALJ's decision did not contain an express statement regarding the extent to which the ALJ was crediting Plaintiff's subjective complaints. It appears that this was because of missing words. (See R. at 25 ("[H]owever, the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms for the reasons explained in this decision. In making this determination . . .").) The Court further notes that the ALJ's decision incorrectly referenced a "her" in this section, even though the Plaintiff in this case is "Richard K." (Id.)

reevaluate Plaintiff's allegations regarding his Crohn's Disease symptoms. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, the ALJ faulted Plaintiff for not seeking treatment for his Crohn's Disease until two months after the alleged onset date even though the ALJ never questioned Plaintiff about the delay. (R. at 26.) Evidence concerning the absence of treatment can support an adverse credibility finding, but "the ALJ 'must not draw any inferences' about a claimant's condition from [that evidence] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Moss*, 555 F.3d at 562 (quoting *Craft*, 539 F.3d at 679). The ALJ mistakenly did that here when she drew a negative inference without allowing Plaintiff to explain the delay. As a result of this error, the Court cannot assess whether the ALJ fairly rejected Plaintiff's subjective symptoms on this basis. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

Second, the ALJ relied on Plaintiff's improvement and return to work in order to discount his subjective allegations. (R. at 26.) But the ALJ did not build a logical bridge between these facts and her conclusion that Plaintiff's reported symptoms were not as severe as alleged. That Plaintiff's symptoms improved to the point that they "remained under good control" with medication or that Plaintiff returned to his prior job did not necessarily mean that his symptoms were not severe enough to affect his ability to work. *See Murphy*, 759 F.3d at 819 ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.");

*Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) ("[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation."). And the ALJ otherwise did not explain how Plaintiff's improvement and eventual return to work undercut his subjective reports of his symptoms. Without any explanation, this reason given by the ALJ to discount plaintiff's symptoms' severity cannot be credited. *See Sanders v. Berryhill*, No. 17 C 2672, 2018 WL 3533312, at *4 (N.D. Ill. July 23, 2018) (concluding ALJ erred by failing to explain how plaintiff's improvement with medication contradicted her statements about her symptoms).

Finally, the ALJ improperly rejected Plaintiff's testimony that his bathroom breaks lasted 20 minutes to an hour. (R. at 26–27.) The ALJ concluded that Plaintiff's "treatment records" did not support this assertion, "particularly as he returned to work in April 2015 and there is no information from [his] employer as to this issue during recent or prior employment related to these limits." (R. at 26–27.) Again, the ALJ erred by not explaining how Plaintiff's return to his prior job undermined his testimony. Additionally, the ALJ's vague reference to unsupportive "treatment records" does not make this reason supported by substantial evidence.

In sum, because the ALJ has not provided reasons supported by substantial evidence for discounting Plaintiff's allegations regarding the severity of his Crohn's Disease symptoms, the ALJ has not built "an accurate and logical bridge" to her conclusion. *Jeske*, 2020 WL 1608847, at *3 (internal quotation marks omitted)

(quoting *Dixon*, 270 F.3d at 1176). The Court therefore remands for further consideration of Plaintiff's subjective reports about his symptoms.

## II.    RFC Determination

Plaintiff next argues that the ALJ further erred by not considering his Crohn's Disease symptoms when crafting the RFC. (Dkt. 14 at 11.) Specifically, Plaintiff contends that the ALJ should have addressed his need for "frequent, lengthy bathroom breaks" in the RFC. (*Id*.) The Court agrees that the ALJ erred and concludes that remand is warranted also for reconsideration of the RFC.

An RFC must accommodate *all* limitations that are supported by the record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see* 20 C.F.R. § 404.1545(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence."). Because the ALJ concluded that Plaintiff's Crohn's Disease was a severe impairment affecting his ability to work, (R. at 18), she needed to address it in the RFC by "determin[ing] how long [Plaintiff] needs for breaks and whether an employer could tolerate such work interruptions." *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *7 (N.D. Ill. Jan 23, 2020). The ALJ, however, did not do so, and the resulting RFC did not incorporate any bathroom-related limitations. This was error.

The closest the ALJ came to evaluating the bathroom-break evidence was when she expressed doubt that Plaintiff would need to spend 20 minutes to an hour in the bathroom per trip during her consideration of Plaintiff's subjective complaints. (R. at 26–27.) But even assuming that analysis amounted to a finding

that Plaintiff did not need to spend 20 minutes to an hour in the bathroom, the ALJ

erred by not identifying what break duration *would* be supported by the record.

*See Sikorski v. Berryhill*, 690 F. App'x 429, 433 (7th Cir. 2017); *Spaulding v.*

*Barnhart*, No. 03 C 4393, 2004 WL 1093312, at *8 (N.D. Ill. May 13, 2004). And the

ALJ also erred by not making a finding concerning the *frequency* of the bathroom

breaks at all.

The ALJ's failure to assess the frequency and duration of Plaintiff's bathroom

breaks requires remand because this issue was "highly relevant to the denial of

benefits." *Manker v. Berryhill*, No. 16 C 10704, 2017 WL 6569719, at *4 (N.D. Ill.

Dec. 22, 2017). The vocational expert ("VE") testified that if the RFC included

5 unscheduled breaks of 20 minutes each per day, Plaintiff would not be employable

full-time. (R. at 75.) Thus, the limitations, if any, the ALJ imposes on remand to

account for Plaintiff's bathroom breaks in the RFC could determine whether he is

entitled to benefits. *See Sikorski*, 690 F. App'x. at 433 (remanding for ALJ to

determine length of plaintiff's bathroom breaks in crafting RFC where VE testified

that employers would generally accommodate six five-minute breaks but not six

ten-minute breaks).

## CONCLUSION

The Court grants plaintiff's motion for summary judgment [13][14], denies

the Commissioner's motion for summary judgment [26][27], reverses the

Commissioner's decision, and remands this case for further proceedings consistent

with this Memorandum Opinion and Order pursuant to the fourth sentence of

42 U.S.C. § 405(g).

**E N T E R:**

**Dated:** April 27, 2020

_____

**BETH W. JANTZ**
**United States Magistrate Judge**